# Anderson v. Commonwealth.

March 6, 1945.

J. Erwin Sanders for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Arnold Anderson, magistrate of the 6th magisterial district in Pike County, was found guilty on the charge of embezzlement and his punishment fixed at one year in prison. The basis of the charge was that he failed to report and turn over to the proper officials of the Commonwealth a $10 fine which he collected from Willie Blackburn on a charge of drunkenness. The area comprising the 6th magisterial district is a highly industrialized one, and is located some 30 or 35 miles from the county seat. As a rule, a number of arrests were made in the district over each weekend on the charges of drunkenness and other minor offenses. Formerly, persons who were unable to pay their fines upon their being found guilty by the justice of the peace were taken to the county seat and placed in jail. Anderson adopted a plan of trying and releasing defendants who were unable to pay their fines with the view of attempting to collect them on subsequent paydays. Judgments of conviction were entered in such cases. An examination of Anderson's records by the State Inspector showed there was more than $100 in fines due and unpaid and he was called upon to pay this amount to the Commonwealth. Thereafter he hit upon the plan of telling a defendant who was unable to pay his fine what it would amount to, but he would not hold a formal trial nor would he make any record or enter any judgment until the fine and the costs were paid in full. He would issue a capias and place it in the hands of J. L. Bowling or Aubrey May, who were deputy sheriffs in his district, in instances where the fine and costs were not paid directly to him. When the deputy sheriffs collected the fines they would give a receipt therefor and turn the capias and the money over to Anderson, whose custom it was to then make the proper entries in his order book. The deputy sheriffs testified that it was not their custom to take a receipt from Anderson when they turned money over to him.

Willie Blackburn was fined $1 and costs for disorderly conduct in Anderson's court early in 1943, and the proper orders and reports were made in connection therewith. During the following April he was charged with drunkenness and fined $10 and costs, a total of $21.60. Twenty dollars of this amount was paid to Anderson by Blackburn's sister and he gave her a receipt

therefor. About a week later May and Bowling brought Blackburn before Anderson again on a warrant wherein he was charged with drunkenness. He was told what his fine would be and was released when he was unable to pay it. About a week later J. L. Bowling, in the presence of May, collected $23.60 from a member of Blackburn's family, and Bowling signed the following receipt:

"April 25th, 1943, Received of Ballard Blackburn $23.60, capias in full." The evidence shows conclusively that the amount referred to in the receipt was collected for the second charge of drunkenness against Willie Blackburn. Bowling and May testified that the $23.60 was turned over to Anderson in his office about a week after the collection was made. Anderson testified that the money was never paid to him and his records and reports make no reference to the second fine against Blackburn. This constituted the charge of embezzlement. The testimony for the Commonwealth shows that the $23.60 included the second fine and costs and also the $1.60 balance of the first fine. Anderson testified that a girl paid him the remaining $1.60 on the first fine and that he gave her a receipt therefor. His evidence on this point was contradicted.

One ground for reversal is that the evidence was not sufficient to show that the money collected by Bowling was turned over to Anderson. This contention we deem without merit, because it is clear from the foregoing summary of the evidence that the question was one for the jury.

The point is made also that before a prosecution can be maintained against an officer for embezzlement the fund that he is charged with embezzling must have been legally in his possession and custody. Reliance is placed upon the cases of Commonwealth v. Alexander, 129 Ky. 429, 112 S. W. 586, 33 Ky. Law Rep. 971, and Commonwealth v. Brand, 166 Ky. 753, 179 S. W. 844. In those cases it was held that a sheriff could not legally come into possession of a tax until it had been certified to him for collection by the clerk. It is insisted that, since there was no judgment entered against Blackburn on the second charge of drunkenness, there was no money actually due the Commonwealth, and that, when a fine is collected under the practice followed in Anderson's court, the officer is the holder of the money for the de-

fendant and not the Commonwealth until the judgment of conviction is entered. We do not believe the cases are analogous. A sheriff has no authority to collect a tax until the proper certification is made to him, nor is the taxpayer protected if he pays a tax until such a certification is made. In the case at bar there is presented a situation where a justice of peace, who has authority to conduct a trial and assess a fine, is attempting to avoid an alleged wrongdoing by relying upon a highly improper method of conducting his court. In the first place he had no authority to release persons charged with misdemeanors who were brought before him without a formal trial unless he continued their cases in a proper manner. In the second place he had no authority to issue a capias in the absence of a judgment of conviction. We may say in this connection that Anderson said the county attorney and the county judge had, in effect, approved his procedure. This the county attorney denied, and the county judge said he told Anderson it would be better to continue a case where the accused was unable to pay his fine when brought into his court. When the capias was issued and placed in the hands of the deputy sheriffs they were authorized to collect the money from the defendants and it was their practice to give a receipt for the full amount when payment was made. We fail to see how it can be contended seriously that once such a collection was made the Commonwealth would not be entitled to its part of the fine. Certainly the defendants could not be fined again on the same charges. Bowling and May testified positively the second Blackburn fine was collected and turned over to Anderson. Of course he said he did not receive it and no record or report was made concerning it, though it is clear from Anderson's testimony that there was a second charge of drunkenness against Blackburn.

It is obvious from what has been said that the contention that May and Bowling were accomplices is without merit. They had entered into no scheme or connivance with Anderson to defraud the Commonwealth of money. According to the testimony of the Commonwealth they collected all fines and costs which they were authorized by Anderson to collect and turned them over to him. They can not be charged with guilt because of the improper manner in which Anderson conducted his court.

In his opening remarks to the jury the Commonwealth's attorney made the statement that after the indictment was returned Anderson paid over to the clerk of the Pike Circuit Court the money which he had embezzled. It is insisted that this statement was highly prejudicial and constituted reversible error, because it was not borne out by the evidence. The circuit clerk testified that his records showed Anderson had paid money into his hands after his indictment, but he said there were only the two entries on his book relating to fines paid by Willie Blackburn—the disorderly conduct fine of $1 and the first drunkenness fine of $10. We fail to see how the statement attributed to the Commonwealth's attorney was prejudicial to Arnold's substantial rights. At most, the Commonwealth's attorney was unable to prove all that he said he would be able to. This would merely tend to discredit him.

Lastly, it is contended that the instructions did not follow the language of the indictment, in that the indictment stated the fine was collected upon a judgment and in that there should have been an instruction as to the weight and effect to be given the testimony of Bowling and May if the jury believed they were accomplices in the commission of the crime. It is obvious from what has been said that the second point is groundless. We think also that the first complaint of the instructions is without merit. The record shows that Blackburn was taken before Anderson, and, according to Anderson's custom, he was told what his fine would be. Furthermore, the evidence for the Commonwealth shows that the fine was collected by the deputy sheriffs and turned over to Anderson, though, as we have noted, no judgment was actually entered, but, as set out in the instructions, a fine was assessed against Blackburn. Under the circumstances we believe the instruction was sufficient.

Judgment affirmed.